[Filed April 21, 1887.]

### RACHEL PALICIO, APPELLANT, *v.* JOHN BIGNE, RESPONDENT.

EXECUTOR OF PARTNERSHIP ESTATE.—Where it was provided by a will that the executor therein named should not be required to give bonds, and the executor, who was a partner of the deceased, administered upon the *general* estate of deceased, and also caused himself to be appointed administrator of the *partnership* estate, and retained the administration thereof after he had closed up the general executorship; *held*, (1) That he should have closed up the partnership estate first. (2) That he should be required to give bonds as executor of the partnership-estate, notwithstanding the provision of the will.

APPEAL from Multnomah County.

*M. G. Munly*, and *Watson, Hume & Watson*, for Appellant.

Bigne could not act as administrator of the partnership estate without giving an undertaking.

The decedent could not dispense with this security, which is for the benefit of creditors of his estate and surviving partners. (*Cook* v. *Lewis*, 36 Me. 340; *Buffum* v. *Buffum*, 49 Me. 100; *Hill* v. *Treat*, 67 Me. 501; *Putnam* v. *Parker*, 55 Me. 235; *Bredon* v. *Mut. Sav. Inst.* 28 Mo. 181; *Crow* v. *Weidner*, 36 Mo. 412; *Collier* v. *Cairns*, 6 Mo. App. 188; *Adams* v. *Marstler*, 70 Ind. 381; *Nelson* v. *Haynes*, 66 Ill. 487; *Scott* v. *Buffum*, 52 N. H. 345.)

The extension of the probate jurisdiction to settlement of partnership matters is, under the statute, original and exclusive, and did not exist at common law. (Story on Partnership, 344; 3 Redfield on Wills, 136; Code, § 869.)

*Strong & Strong*, for Respondent.

There was no partnership property in the sense of the words used in the probate act. Under the Code, section 1056, page 3181, no bonds can be required of Bigne, the testator having declared that no bonds shall be required.

STRAHAN, J.—Pierre Manciet died in Portland, Oregon, on the nineteenth day of April, 1882. Before his death he made and

published his last will in due form, by the terms of which it is
provided:—

"1st. It is my will that all my debts be paid as soon as may
be convenient to my executor after my decease.

"2d. I do devise and bequeath to my executrix and executor
hereinafter named, and to the survivor of them, or either of them,
all the residue and remainder of my estate, real, personal, and
mixed, of every name and nature, and wherever situate, to have
and to hold the same in trust for the uses and purposes hereinafter
declared, that is to say, to the sole use and benefit of my beloved
wife, Petra Cortes, during her natural life, giving to her the rents
and profits of the same for her use, and the interest and income
from all sources, and so much of the principal of the estate as
may be required to enable her to comfortably provide for her
own support, and for the maintenance, support, and education
of her children hereinafter named, so long as they are minors, or
may be dependent upon her; and it is my wish that this support
shall be furnished her, from time to time, as her necessities may
require.

"At the death of my said wife, all the remainder of my said
estate, at her decease, after satisfying all her just debts, to be con-
verted into money by my said executor, or his substitute, to be
appointed by the proper court, in case of his death or removal,
and divided equally, share and share alike, between the following
named persons, to wit: Frank Palicio, son of my wife by a
former marriage, and Rachel Palicio, daughter of my said wife
by said former marriage, and our children, Charles, John, Linda,
Peter, Vincent, Madeline, Pauline, and Louisa.

"3d. I hereby fully empower my said executor and executrix,
or either of them, if only one is acting, to have and possess the
full control and management of my estate, to sell, convey, or
exchange my real property, or any part of the same, and therein
invest the proceeds, and to convert real estate into money, or
money into rent-paying real property, bonds, mortgages, or other
securities, whenever and as often as they shall deem most for
the advantage of my said estate.

"Item. I make this will in the full confidence that my said

executor and executrix, having themselves full knowledge of all the circumstances of the long copartnership between my executor and myself, will be able to settle amicably and in a liberal manner all matters relating to said copartnership.

"I hereby direct that my said executor and executrix be not required to give bonds or security for the discharge of their duties under this will, and request that no bonds be required of them.

"I hereby nominate and appoint my said wife, Petra ·Cortes, executrix, and my life-long friend, John Bigne, executor of this, my last will and testament."

On the tenth day of May, 1881, said will was duly proven and admitted to probate in said County Court of the State of Oregon for the county of Multnomah, and letters testamentary were, on the same day, issued by said court to said John Bigne and Petra Cortes Manciet, the executor and executrix named in said will, who immediately qualified and entered upon the duties of said trust. That on the nineteenth day of April, 1882, said Petra Cortes Manciet died, and thereafter the said John Bigne continued to act as the sole executor of said will. On the twenty-third day of March, 1882, said executor and executrix filed an inventory of said estate, and on the ninth day of September, 1885, he filed " his final report of his actings and doings as executor of the estate of Pierre Manciet, deceased." On the fourth day of November said County Court made an order allowing said account, except as to the executor's commission, from which the court deducted $612.50. On the twenty-third day of July, 1886, Rachel Palicio filed in said County Court a petition for the removal of John Bigne from said trust, or for an order requiring him to give security as administrator of the partnership estate of Manciet and Bigne. Various and sundry irregularities are charged in said petition against said John Bigne in the conducting and management of said trust; but in the present state of this record we do not think it necessary to consider them. On the hearing of the petition, said County Court made an order requiring said John Bigne to file with the clerk of the court, within ten days after notice of such order, his undertaking as

administrator of the partnership estate of Manciet and Bigne, in
the sum of $135,450, with sureties to be approved by the judge
of said court, conditioned according to law.    The court also, at
the same time, made an order perpetually enjoining the said John
Bigne from selling, or in any manner disposing of any of the
property of said estate, without the order and license of said court
first had and obtained therefor.    From these orders John Bigne
appealed to the Circuit Court.    On hearing of said appeal, the
Circuit Court reversed the order of the County Court requiring
him to give an undertaking as administrator of the partnership
estate of Manciet and Bigne, and also gave a decree against the
appellant for costs, from which decree this appeal is taken.

*Power of County Court to require undertaking.*    The power of
the County Court to require an undertaking of Bigne as admin-
istrator of the partnership of Manciet and Bigne depends upon
tho construction to be given section 1056 of the Civil Code, and
some other sections thereof to be presently referred to.    That
section reads thus:—

"No executor or administrator is authorized to act as such
until he shall file with the clerk of the County Court having juris-
diction of the estate, an undertaking in a sum not less than
double the probable value of the estate, with one or more suffi-
cient sureties to be approved by the county judge, to be void upon
the condition that such executor or administrator shall faithfully
perform the duties of his trust according to law ; *provided*, that
when, by the terms of his will, a testator shall expressly declare
that no bonds shall be required of his executors, such executor
may act, upon taking an oath to faithfully fulfill his trust, without
filing the undertaking in this section mentioned. . . . ."

It was conceded upon the argument, that by the terms of
Pierre Manciet's will his executors were exempted from giving
bond as such by the terms of the above provisio; and the ques-
tion presented for our determination is, does it exempt him from
giving an undertaking as administrator of the partnership of
Manciet and Bigne?    And it seems to me this depends altogether
on the other sections of the Code applicable to that subject.    Sec-
tion 1069 of the Civil Code provides:  "The executor or admin-

istrator of a deceased person who was a member of a copartnership shall include in the inventory of such person's estate, in a separate schedule, the whole of the property of such partnership, and the appraisers shall estimate the value thereof, and also the value of such person's individual interest in such partnership property, after the payment or satisfaction of the debts and liabilities of the partnership." Section 1070 provides: "After the inventory is taken the partnership property shall be in the custody and control of the executor or administrator for the purposes of administration, unless the surviving partner shall, within five days from the filing of the inventory, or such further time as the court or judge may allow, apply for the administration thereof, and give the undertaking therefor as hereinafter prescribed." Section 1073 of the Civil Code provides: "In case the surviving partner is not appointed administrator of the partnership, the administration thereof devolves upon the executor or general administrator; but before entering upon the duties of such administration he shall give an additional undertaking in double the value of the partnership property."

In the case before us John Bigne is the surviving executor of Pierre Manciet's will, and he is also the surviving partner of the firm of Manciet and Bigne; but he never saw proper to qualify as administrator of the partnership in his capacity as such surviving partner. Therefore, whatever rights and authority he has in that behalf are such as are devolved upon him by virtue of his executorship of Manciet's will. Section 1073, supra, certainly does require the executor to give an additional undertaking before entering upon the duties of such administration; unless the provisio to section 1056 has repealed, by implication, so much of section 1073 as provides for an additional undertaking in cases of partnership, where the executor is relieved by will from giving the undertaking, it is plain the terms of section 1073 must be complied with. Repeals by implication are never favored by the courts, and are allowed only in cases where the conflict between the old and new statute is irreconcilable and in such direct opposition that both cannot stand. This is not true of these two provisions. Here there is no conflict. Both provisions can have

effect by applying them to the precise cases each was designed to meet.   It requires a strained and unreasonable construction to make the conflict even colorable.   In addition to this the provisio to section 1056 ought not to be enlarged or extended.   It tends to render trusts of this nature uncertain and insecure; or, at least, it takes away one of the safeguards which is deemed proper in such cases in a very large majority of the States.   It is true the legislature may allow the testator to dispense with it in the first instance, and so far as it has plainly done so it must be enforced; but it is not one of those kinds of statutes the terms of which ought to be extended to any cases not plainly within its terms.·

*Partnership estate should be settled first.*   This estate seems to have fallen into a condition of serious confusion.   One grave irregularity is in the attempt of the executor to settle the estate of Pierre Manciet first and the partnership estate afterwards. This was irregular.   The partnership estate must be first settled and next the individual estate.   This is plainly to be inferred from section 1071 of the Civil Code.   By that section the duties of the administrator of the partnership extend to the settlement of the partnership business generally, and the payment or transfer of the interest of the deceased in the partnership property remaining after the payment or satisfaction of the debts or liabilities of the partnership to the *executor* or *general administrator,* within six months from the date of his appointment, or such further time as the court or judge may allow.   And this would be true if the statute were silent on the subject.   From the nature of the case the executor or administrator of the individual estate could make no final settlement of his trust until all the effects and interest of the testator or intestate in the partnership had been ascertained, settled, and paid or delivered to him.   Only in this way could the property of the deceased invested in the partnership business be made available for the payment of the individual debts of the deceased partner, or for distribution. So far as appears, the executor has been making an honest effort to settle this estate, but the vagueness of the statute rendered his powers and duties somewhat uncertain.   It is not clear that our statute has fully provided for such cases, or that it has given the

County Courts powers entirely adequate to all of the emergencies of such cases; and this applies more particularly to the ascertainment and settlement of the state of the accounts between the partners. This defect was referred to in *Burnside* v. *Savier*, 6 Or. 154, and in *Mann* v. *Flanagan*, 9 Or. 425. At a certain stage of the proceedings in the County Court the power of a court of equity was invoked, which met the approval of this court.

The views expressed require a reversal of the decree of the Circuit Court, and the affirmance of the order of the County Court appealed from.